UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                      :

RADIANCY, INC.,                                  :
                                        :
                Plaintiff,         :
v.                                   :
                                        :
VIATEK CONSUMER PRODUCTS    :
GROUP, INC.,                           :          13-cv-3767 (NSR)
                                      :    AMENDED OPINION AND ORDER
            Defendant and Counterclaim-:
            Plaintiff                 :
                                        :
v.                                   :
                                        :
RADIANCY, INC., and                 :
PHOTOMEDEX, INC.,              :
                                        :
            Counterclaim-Defendants.  :
-------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge.

Radiancy ("Plaintiff") commenced this action against Viatek ("Defendant" and "Counterclaim Plaintiff") under 35 U.S.C. §§ 271 and 281 for patent infringement and pursuant to 15 U.S.C. § 1125(a) for false advertising, trade dress infringement, trademark infringement, and unfair competition. In defense, Defendant asserted twenty-one Affirmative Defenses and seven Counterclaims against Radiancy and its parent company, PhotoMedex, Inc. (together, "Counterclaim Defendants"). Before the Court is Counterclaim Defendants' motion to strike Affirmative Defenses six, seven, and twenty-one pursuant to Fed. R. Civ. P. 9(b) and 12(f), dismiss PhotoMedex, Inc. from this action pursuant to Fed. R. Civ. P. 12(b)(5) and (6), and dismiss the Second Counterclaim pursuant to Rule 12(b)(1), the Third Counterclaim pursuant to Rule 9(b) and 12(b)(6), and the Fourth and Fifth Counterclaims pursuant to Rule 12(b)(6). This opinion amends the opinion previously issued by this Court on March 28, 2014, Docket No. 113.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/1/2014

For the following reasons, Counterclaim Defendant's motion is granted in part and denied in part.

## I.      Background

Plaintiff is a Delaware company specializing in skincare products, specifically light and heat-based skincare equipment for professionals and household consumers. Amend. Compl. ¶ 2. Plaintiff obtained U.S. Patent No. 7,170,034 ("the '034 Patent") from the United States Patent and Trademark Office ("USPTO") for its product no!no!® Hair, which is a handheld device that uses heat to remove hair.  *Id*. at ¶ 4 & Ex. 1. The '034 Patent is entitled "PULSED ELECTRIC SHAVER" and was granted on January 30, 2007. *Id*. In addition to the '034 Patent, Plaintiff is also the owner of Patent No. 6,825,445 ("the '445 Patent"), entitled "REAL ELECTRIC SHAVER." Counterclaim ¶ 8 & Ex. B. On December 13, 2011 PhotoMedex, Inc. and Radiancy effectuated a reverse merger whereby Radiancy became a wholly-owned subsidiary of PhotoMedex. Counterclaim ¶ 2; Douglass Dec. Ex. K. Following the merger, the pre-merger shareholders of PhotoMedex owned approximately 20% of the outstanding common stock in PhotoMedex and its subsidiaries while the pre-merger shareholders of owned approximately 80% of the outstanding common stock of PhotoMedex and its subsidiaries. Douglass Dec. Ex. K.

Defendant is a Florida corporation that develops, manufacturers, and markets home goods and personal care products, including hair removal devices, personal fans, flashlights, beauty products, dental products, kitchen supplies, and cleaning products. Counterclaim ¶ 1. Defendant manufacturers and sells the Pearl™ Hair Remover, the allegedly infringing product. Amend. Compl. ¶ 5. Defendant also manufacturers the Samba™, a hot wire hair removal device that does not use a pulsed heating source. Counterclaim ¶ 32. The Samba was first sold on August 27, 2013 by ShopNBC, one of Defendant's customers. *Id*. Plaintiff alleges that in

Defendant's advertising of its hair removal products, Defendant uses false and misleading information to confuse consumers, including directly lifting photographs and videos from Plaintiff's advertising materials and using them to promote the Pearl Hair Remover. *Id*. at ¶¶ 20-22.

Plaintiff first confronted Defendant about the alleged patent infringement in a letter sent on April 27, 2012. Ratner Dec. Ex. G. In that letter, Plaintiff stated that it believed Defendant was infringing both the '034 Patent and the '445 Patent. *Id*. Subsequent exchanges between the parties show that Viatek contested Radiany's assertion of infringement and that Radiancy did not change its original position.

Plaintiff brought suit against Defendant alleging violations of 35 U.S.C. §§ 271 and 281, based on belief that Defendant "markets, distributes, advertises, uses, offers for sale, sells and imports into the United States the Pearl Hair Remover, which infringes the '034 Patent." Amended Complaint ("Amend. Compl.") ¶ 5. Plaintiff's Amended Complaint also claims that Defendant violated Section 43(a) of the Latham Act (15 U.S.C. § 1125(a)) by engaging in false advertising, trade dress infringement, trademark infringement, and unfair competition. *Id*.

## II.      Procedural History

Following the filing of this action on June 3, 2013, Plaintiff filed an Amended Complaint on June 24, 2013, in which it added claims for false advertising, trade dress infringement, and unfair competition to its claims of patent infringement. Viatek filed an Answer and Counterclaims on September 23, 2013. Dock. No. 22. An Amended Answer with Counterclaims was filed on September 29, 2013. Dock. No. 24. Viatek filed a Second Amended Answer and Counterclaims on October 1, 2013. Dock. No. 26. In its Second Amended Answer and Counterclaim ("Sec. Amend. Ans. & Counterclaims"), Viatek asserts twenty-one affirmative defenses and seven counterclaims against Counterclaim Defendants. The present motion to strike

3

addresses three affirmative defenses (the Sixth, for inequitable conduct, the Seventh, for violation of the best mode requirement, and the Twenty-First, for unclean hands) and four counterclaims (the Second, for declaratory judgment of noninfringement and invalidity of the '445 patent, the Third, for violation of Section 2 of the Sherman Act, the Fourth, for unfair competition, and the Fifth, for tortious interference), and seeks to dismiss PhotoMedex, Inc. from the action.

### III.  Legal Standards

#### a.  Motion to Strike Affirmative Defenses

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In order to prevail on a motion to strike affirmative defenses under Fed. R. Civ. P. 12(f), plaintiff must satisfy the following three-part test: "(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010) (citation omitted). "In assessing the sufficiency of an affirmative defense, the Court 'should construe the pleadings liberally to give the defendant a full opportunity to support its claims at trial, after full discovery has been made.'" *Cartier Int'l AG v. Motion in Time, Inc.*, No. 12 Civ. 8216(JMF), 2013 WL 1386975, at *3 (S.D.N.Y. 2013) (quoting *Coach, Inc.*, 756 F. Supp. 2d at 425). "Increased time and expense of trial may constitute sufficient prejudice to warrant striking an affirmative defense." *Coach, Inc.*, 756 F. Supp. 2d at 426.

#### b.  Motion to Dismiss Counterclaim

4

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12 Civ. 6017(KBF), 2013 WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013) (citation omitted). On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. It is not necessary for the complaint to assert "detailed factual allegations," but must allege "more than labels and conclusions." *Twombly*, 550 U.S at 555. "[A] formulaic recitation of the elements of a cause of action will not do." *Id*. The facts in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

### c.  Applicable Law

The United States Court of Appeals for the Federal Circuit has "exclusive jurisdiction of an appeal from a final decision of a district court of the United States ... in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1). Based on the Federal Circuit's jurisdiction, a "district court must . . . follow Federal Circuit precedent in a case arising under the patent laws." *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 475 (Fed. Cir. 1991). A case "aris[es] under the patent laws" if the complaint establishes that "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988). If a plaintiff presents a claim "supported by alternative theories in the complaint," that claim does not depend on patent law and accordingly Federal Circuit precedent is not controlling. *Id*. at 810. "In other words, an antitrust claim only gives rise to Federal Circuit jurisdiction and only necessitates the application of Federal Circuit law, if 'patent law is essential to each of [the] theories" of liability under the antitrust claims alleged in the complaint.'" *In re Lipitor Antitrust Litigation*, Master Docket No. 3:12–cv–2389 (PGS), 2013 WL 4780496, at *14 (D.N.J. Sept. 5, 2013) (quoting *Christianson*, 486 U.S. at 809).

## IV.  Discussion

### a.  PhotoMedex Should be Dismissed From this Action

#### i.  Improper Service

Under Fed. R. Civ. P. 12(b)(5), a defendant may move to dismiss on the basis that service of process was improper. Fed. R. Civ. P. 12(b)(5). Without proper service, the court lacks personal jurisdiction over the defendant. Under New York law, a corporation may be served by personal service on a director, officer, managing or general agent, or cashier or assistant cashier,

or any other agent authorized by law to accept service. N.Y. C.P.L.R. § 311(a)(1); Fed. R. Civ. P. 4(e)(1), (h).

"New York Courts have consistently held that service of process on one corporation does not confer jurisdiction over another, even where one corporation may wholly own another, or where they may share the same principals." *McKibben v. Credit Lyonnais*, No. 98 Civ. 3358 LAP, 1999 WL 604883, at *3 (S.D.N.Y. Aug. 10, 1999) (internal quotation and citation omitted). "The standards set in Rule 4(d) for service on individuals and corporations are to be liberally construed, to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972). "But there must be compliance with the terms of the rule, and absent waiver, incomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained." *Id*.

Before Viatek filed its Counterclaims, PhotoMedex, Inc. was not a party to this action. As such, Viatek was required to serve PhotoMedex, Inc. in accordance with New York law. Viatek served PhotoMedex by electronically serving a copy of the Answer and Counterclaims on Radiancy's counsel. Sec. Amend. Ans. & Counterclaims p. 54. This is not proper service on PhotoMedex. In order to effectuate proper service, Viatek needed to serve PhotoMedex, Inc., a company, pursuant to C.P.L.R. § 311. There was no personal service made on PhotoMedex's directors, officers, or agents, and Radiancy's counsel was not authorized to accept service on behalf of PhotoMedex.[1] Even if Viatek were given leave to properly effectuate service, such

---

[1] Neither the Answer, Amended Answer, nor Second Amended Answer was personally served on PhotoMedex. *See* Dock. Nos. 22, 24, 26.

service would be futile because Viatek does not satisfy the standard under Delaware law for

piercing the corporate veil and holding PhotoMedex liable for Radiancy's harms.

### ii.  Piercing the Corporate Veil

In order to hold PhotoMedex liable for Radiancy's actions, Viatek must seek to pierce the

Radiancy's corporate veil. "It is a general principle of corporate law deeply 'ingrained in our

economic and legal systems' that a parent corporation (so-called because of control through

ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *U.S. v.*

*Bestfoods*, 524 U.S. 51, 61 (1998). It is equally ingrained, however, that in certain circumstances,

"the corporate veil may be pierced and the shareholder held liable for the corporation's conduct .

. . ." *Id* at 62.

"New York's choice of law rules provide that 'the law of the state of incorporation

determines when the corporate form will be disregarded and liability will be imposed on

shareholders.'" *Taizhou Zhongneng Import and Export Co. v. Koutsobinas*, 509 F. App'x 54, 56

n. 2 (2d Cir. 2013) (quoting *Fletcher v. Atex*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Radiancy is

incorporated in Delaware, thus, the Court must apply Delaware law to determine whether to

pierce the corporate veil.[2]

"To pierce a corporate veil under Delaware law, a plaintiff must show that the individual

has 'complete domination and control' over the entity such that it 'no longer ha[s] legal or

independent significance of [its] own.'" *Carotek, Inc. v. Kobayashi Ventures, LLC*, 875 F. Supp.

---

[2] Viatek erroneously asserts that Nevada law should apply because PhotoMedex is incorporated in Nevada. However, Viatek is seeking to pierce Radiancy's corporate veil and therefore, the state of incorporation of Radiancy is the determining factor. *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, Case No. 10–CV–4145 (KMK), --- F. Supp. 2d ---, 2013 WL 5434638, at *6 (S.D.N.Y. Sept. 27, 2013) ("[T]he subsidiary[] is a Delaware-based corporation, and . . . the parent, is an Indiana-based corporation. Because Plaintiff seeks to disregard the subsidiary's . . . corporate form and hold the parent . . . liable, Delaware law governs Plaintiff's veil-piercing attack.").

2d 313, 350 (S.D.N.Y. 2012) (quoting *Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999)). The alter ego theory, under which Counterclaim Plaintiff proceeds, is a subset of the general corporate veil piercing theory and "'requires that the corporate structure cause fraud or similar injustice.' Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Wallace*, 752 A.2d at 1184 (quoting *Outokumpu Eng'g Enter., Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724, 729 (Del. 1996)).

"In order to succeed on an alter ego theory of liability, plaintiffs must essentially demonstrate that, in all aspects of the business, the corporations actually functioned as a single entity and should be treated as such." *Blair v. Infineon Techns. AG*, 720 F. Supp. 2d 462, 470 (D. Del. 2010)[3] (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) (alterations omitted)). "Under the single entity test, the Third Circuit has considered seven factors in determining whether a corporation operated as a single economic entity: (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporations at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) whether the corporation is merely a facade."[4] *Blair*, 720 F. Supp. 2d at 470-71. "While the list of factors is not exhaustive and no single factor is dispositive, some combination is required, and an overall element of fraud, injustice, or unfairness must always be present." *Id*. at 471.

Facts not contained in the Complaint, or here, Counterclaim, cannot be considered in determining the sufficiency of the pleadings on a motion to dismiss. *Blair*, 720 F. Supp. 2d at

---

[3] Note that "[t]he alter ego analysis is in fact the same under state or federal law because '[v]eil piercing is not dependent on the nature of the liability. Under both state and federal common law, abuse of the corporate form will allow courts to employ the tool of equity known as veil-piercing.'" *Blair v. Infineon Techs. AG*, 420 F. Supp. 2d 462, 470 n. 11 (D. Del. 2010) (quoting 18 Francis C. Amendola et al., C.J.S. Corporations § 14 (2010)).

[4] "The seven 'single entity' factors used by the Third Circuit apply in Delaware regardless of whether the cause of action is based on federal or state law." *Blair*, 720 F. Supp. 2d at 471.

472 n. 15. In its Counterclaim, Viatek supports its claim by stating that Radiancy is "completely controlled by PhotoMedex," both entities have the same CEO, that PhotoMedex is the alter ego of Radiancy, and that PhotoMedex is the real owner of the patent at issue. Sec. Amend. Ans. & Counterclaims p. 17 ¶ 3. The alter ego and patent ownership allegations are conclusory and are therefore not accepted as factual allegations. Even taking the other assertions as true, there is no allegation of fraud or injustice, and there are no facts from which such could be inferred. The standard for piercing the corporate veil under Delaware law is high and requires allegations beyond those that are present in Viatek's pleadings. Viatek makes additional claims in its opposition brief, including that Radiancy and PhotoMedex share legal counsel and support staff, are operating as the same company, there is common ownership of the two entities as indicated in SEC filings, PhotoMedex included Radiancy's assets on its balance sheets, and that company statements refer to the two entities as a common unit. However, on a motion to dismiss, the Court is bound by the four corners of the Complaint and will not consider these additional allegations.[5]

### b.  Affirmative Defenses

#### i.  Sixth Affirmative Defense: Inequitable Conduct

Viatek's Sixth Affirmative Defense for inequitable conduct alleges that Radiancy "intentionally omitted, and/or withheld from, and/or misrepresented to, and/or mischaracterized, and/or buried information respecting the prior art to the [USPTO] . . . with the intent to deceive the [USPTO] and cause the issuance of each one of the Patents." Sec. Amend. Ans. & Counterclaims p. 13. The Federal Circuit in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649

---

[5] Similarly, the surreply submitted by Viatek to the Court in a letter on January 9, 2014 and Radiancy's response submitted on January 14, 2014 are not considered on this motion to dismiss.

F.3d 1276 (Fed. Cir. 2011), chastised the use of the doctrine of inequitable conduct as having led to undesirable results in patent cases, including "increased adjudication cost and complexity, reduced likelihood of settlement, burdened courts, strained PTO resources, increased PTO backlog, and impaired patent quality." *Id*. at 1290. In an attempt to remedy such consequences, the court established stricter substantive standards – in addition to the higher pleading standards established in *Exergen Corp. v. Wal-Mart* Stores, 575 F.3d 1312, 1328 (Fed. Cir. 2009) – in order to "redirect a doctrine that has been overused to the detriment of the public." *Therasense*, 649 F.3d at 1290.

"[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp.*, 575 F.3d at 1328. This means that the pleading must "name the specific individual associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it," *id*. at 1329; "identify the specific prior art that was allegedly known to the applicant and not disclosed," *id*. at 1327; "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found," *id*. at 1329; "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record," *id*. Further, "the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290. "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1334 (Fed. Cir. 2012) (quoting *Therasense*, 649 F.3d at 1290).

Radiancy's motion to strike the affirmative defense of inequitable conduct is granted. Viatek fails to establish with particularity the who, what, when, where, why, and how of the deceptive actions taken before the PTO to satisfy the pleading standards. Nor can those specifics be inferred from the Counterclaims. *C.f.*, *Cognex Corp. v. Microscan Sys., Inc.*, No. 13 Civ.2027(JSR), 2013 WL 6906221, at *8-9 (S.D.N.Y. Dec. 31, 2013) (on a motion to strike affirmative defense of inequitable conduct, court found that there was an inference of intent that could be drawn from a number of facts stated in the pleading which satisfied the who, what, when, where, why, and how pleading requirement of *Exergen*).  Allegations relevant to this affirmative defense are wholly conclusory and lack specifics regarding exactly what it was that was misrepresented, mischaracterized, or omitted in Radiancy's application to the USPTO.

In its opposition brief, Viatek states that U.S. Patent No. 6,307,181 is the relevant prior art that, if properly disclosed and characterized, the PTO would not have issued the '034 Patent. Opp'n Br. 34-35. Viatek asserts that this prior art was "buried" by Plaintiff in order to intentionally deceive the PTO Examiner, but courts have generally rejected the claim that a reference, if submitted to the PTO Examiner, can be buried for the purposes of establishing inequitable conduct. *See, e.g.*, *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000) ("An applicant can not be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner."). Furthermore, these allegations were not made in the Counterclaim. The Federal Circuit in *Exergen* made clear that it is the pleading that must allege the specifics of the misrepresentation or omission that occurred before the PTO. Viatek's pleading falls short of making the requisite factual allegations. Moreover, even if the Court could consider the additional claims made in Viatek's opposition

brief, there are no factual claims regarding the "who," or the person or persons that were involved in the fraudulent conduct. Accordingly, this affirmative defense is stricken.

### ii.  Seventh Affirmative Defense: Best Mode

Viatek's Seventh Affirmative Defense states: "The applicant in the patent failed to disclose the best mode for practicing the alleged invention." Sec. Amend. Ans. & Counterclaims p. 13. Under the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011), in all proceedings commenced on or after September 16, 2011, "the failure to disclose the best mode shall not be a basis on which any claim of a patent may be canceled or held invalid or otherwise enforceable." 35 U.S.C. § 282(b)(3)(A). Under 35 U.S.C. § 112(a), the statutory language requires that the patent "specification . . . shall set forth the best mode . . . of carrying out the invention." 35 U.S.C. 112(a). Viatek states that while best mode may not be the basis for cancelling a claim or holding a claim invalid following the amendment to the Leahy-Smith Act, it nonetheless remains valid on the issues of enforceability, injunctive relief and damages. Sec. Amend. Ans. & Counterclaims p. 27.

"The version of the Patent Act currently in effect provides that, although an applicant must disclose the best mode to register a patent, a party to a lawsuit may not rely on an alleged best mode disclosure violation to cancel, invalidate, or hold a patent otherwise unenforceable." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1084 (Fed. Cir. 2012). Thus, under section 112, the best mode must still be included in the patent application, but it may no longer be used as a defense in a patent litigation action. Memorandum re: Requirement for a Disclosure of the Best Mode, dated September 20, 2011, http://www.uspto.gov/aia_implementation/best-mode-memo.pdf. The Court grants Plaintiff's motion to strike the Seventh Affirmative Defense. *See Coach, Inc.*, 756 F. Supp. 2d at 426

("[I]nclusion of a defense that must fail as a matter of law prejudices the plaintiff because it will needlessly increase the duration and expense of litigation.").

### iii.   Twenty-First Affirmative Defense: Unclean Hands

Viatek's twenty-first Affirmative Defense states, "The Complaint is barred, in whole or in part, by the doctrine of unclean hands." Sec. Amend. Ans. & Counterclaims p. 15. Viatek's argument for the application of the doctrine of unclean hands is essentially that Radiancy engaged in the same conduct that it is asserting against Viatek in its Complaint. Specifically, Viatek points to the claim that Viatek is using Radiancy's trademark in its website metadata, directing Google searches toward its product, and the allegations of false advertising with respect to statements made by Viatek that the hair removal devices cause the cessation of hair growth. Viatek alleges that Radiancy is similarly using Viatek's trademark in Radiancy's website metadata, Counterclaim ¶ 39, that Radiancy similarly have taken actions to influence Google searches, Counterclaim ¶ 38, and that Radiancy also advertised that the hair removal devices could stop hair growth. Sec. Amend. Ans. & Counterclaims, p. 12.

"The 'unclean hands' doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 329-30 (1994) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). "It is undisputed that an unclean hands defense requires a finding of bad faith . . . [and] to assert a defense of unclean hands, a party must have been injured by the allegedly inequitable conduct." *Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371, 401 (S.D.N.Y. 2001).

"Pleading the words 'unclean hands' without more . . . is not a sufficient statement of such defense." *Obabueki*, 145 F. Supp. 2d at 401; *see also Cartier Int'l, AG*, No. 12 Civ. 8216(JMF), 2013 WL 1386975, at *3 (S.D.N.Y. Apr. 5, 2013) ("Because Defendant's Answer offers no indication of how the doctrine[] of unclean hands . . . would bar Plaintiffs' claims, the motion to strike Defendant's second affirmative defense is granted."); *Daiwa Special Asset Corp. v. Desnick*, No. 00 CIV. 3856(SHS), 2002 WL 1997922, at *12 (S.D.N.Y. 2002) ("defense of unclean hands should fail . . . [because] the mere pleading of the defense . . . without more is insufficient."). Although Plaintiff does not state why not striking this affirmative defense would be prejudicial, courts have held that "[a plaintiff] would be prejudiced by inclusion of this claim . . . [because] additional discovery would be required as a result of the inclusion of the unclean hands defense . . . [and] the length and scope of the trial . . . would be expanded." *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 114 (S.D.N.Y. 2005). Viatek's claims regarding the advertising of the hair removal products is not clearly set forth in its Counterclaims.

With respect to the claims of use of Viatek's trademark in Radiancy's website metadata and directing Google searches, Viatek adequately alleges that Radiancy is engaging in the same conduct of which it is accusing Viatek. Thus, with respect to these two issues only, the Court denies Radiancy's motion to strike the affirmative defense of unclean hands.

## V.     Counterclaims

### a.  Declaratory Relief Under Patent Number 6,825,445

"The purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987). When a party seeks

15

declaratory relief under the Declaratory Judgment Act, the moving party bears the burden of proving that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The standard espoused in *MedImmune* is that the "dispute [must] be definite and concrete, touching the legal relations having adverse legal interests and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 127 (internal quotations and citations omitted). "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). The Federal Circuit in *SanDisk* held that "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." *Id.*

Viatek states that it has been made to "believe it will be sued for patent infringement under the '445 patent with respect to Accused Products and Planned Products,"[6] Counterclaim ¶

---

[6] Viatek states that its Planned Products are "products with heater elements driven by oscillating current signals in excess of 50-60 Hz and/or in excess of 250 Hz," Counterclaim ¶ 61, and that "[i]t is contemplated that Planned Products will be controlled by an on/off switch, and/or a manual heat intensity control in the form of a knob or up-and-down temperature controls, and/or motion detection, and/or velocity detection, and/or other mechanisms for shutting down the system if excessive heat is threatened or detected." *Id.* Viatek defines Accused Products as "heat-

66, and therefore seeks a declaratory judgment that it is not infringing the '445 Patent. This apparent fear arises from an exchange of letters between counsel for the two entities beginning in 2012. In a letter sent to Viatek on April 27, 2012, Radiancy stated that it believed that Viatek was infringing the '445 Patent as well as the '034 Patent. Ratner Dec. Ex. G.[7] In response, Viatek stated that it disagreed with the determination that its products infringed either the '445 Patent or the '034 Patent. Ratner Dec. Ex. H. Radiancy responded on May 17, 2012, holding firm to its initial position that Viatek's products infringed Radiancy's *patents* (plural). Ratner Dec. Ex. I. Finally, in a May 15, 2013 letter, Radiancy detailed to Viatek why it believed that the Pearl Hair Remover infringes the '034 Patent, making no reference to the '445 Patent. Counterclaim Ex. J. Ultimately, Radiancy filed the current action against Viatek, stating claims solely under the '034 Patent. It amended its Complaint to add trade dress claims, but continued not to assert infringement of the '445 Patent.

"[A] communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more, cannot establish adverse legal interests between the parties, let alone the existence of a 'definite and concrete' dispute." *Hewlett–Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362. The letters, although initially asserting the '445 Patent, must be taken in the context of the circumstances. In this case, it is significant that although Radiancy initially asserted both the '034 Patent and the '445 Patent, it filed this action only

---

based haircutting devices in which the heater element was driven by 1) an oscillating current signal having a frequency in excess of 50 Hz and 2) a DC signal." *Id.*

[7] Although not attached to the Counterclaim, these letters are deemed incorporated by reference into the Counterclaim. The letter attached as Exhibit J to the Counterclaim begins, "Further to our letter dated April 27, 2012, and your response to that letter dated May 4, 2012 . . . ." Counterclaim Ex. J. As such, those previous letters are important to the context of the letter included with the Counterclaim and may be considered on this motion to dismiss. *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (on a motion to dismiss, a court may consider those facts "asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.").

under the '034 patent. *See Cepheid v. Roche Molecular Sys., Inc.*, No. C–12–4411 EMC, 2013 WL 184125, at *11 (N.D. Cal. Jan. 17, 2013) ("Significantly, even in the midst of a heated legal battle over the [] patent[-in-suit] when Defendant could have invoked the [uncontested] patent as leverage in that battle, Defendants made no move to pressure Plaintiff into licensing the [uncontested] patent, and did not threaten legal action on the [uncontested] patent."). Surely, if Radiancy believed that Viatek was infringing the '445 Patent, it would have asserted such a claim in this action, which has been vigorously litigated. Since the initial letters referencing the '445 Patent – sent almost two years ago – there has been no conduct indicating that Radiancy believes Viatek is infringing the '445 Patent. *See Furminator, Inc. v. Ontel Prods. Corp.*, 246 F.R.D. 579, 589 (E.D. Mo. 2007) ("Nor is there any evidence that [the patent holder] has asserted that [plaintiff is] engaged in present, ongoing infringement of . . . patent, or demanded that [plaintiff] license the patents, as occurred in *SanDisk*."); *see also Cepheid*, 2013 WL 184125, at *12 ("While the Federal Circuit has held in several cases that the passage of time between a defendant's threat and the filing of a declaratory action suit does not necessarily defeat standing, these cases involved a more concrete original threat, and in many cases ongoing activity during the elapsed time suggested that the threat of enforcement had not dissipated.").

Viatek also points to a trademark infringement action Radiancy filed against Viatek in Canada as further supporting its apprehension that Radiancy will not hesitate to file another lawsuit against it based on the '445 Patent. Counterclaim Ex. D. When considering whether there is an actual controversy, "prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008); *see also Hewlett–Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1364 n. 1 (Fed. Cir. 2009) ("[a] history, or the lack thereof, of

litigating in the industry can certainly be a factor to be considered."); *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1159 (Fed. Cir. 2006) (finding standing in party because the defendant had previously brought suit for infringement of a patent that "describe[d] a similar technology and share[d] a common specification" with the patent-in-suit). However, the Canadian action was filed for trademark infringement, and that lawsuit, too, did not assert the '445 Patent against Viatek.

Finally, there is no indication that Viatek is not pursuing its Planned Products for fear that Radiancy will assert the '445 Patent as against those products. *See Ass'n for Molecular Pathology v. U.S. Patent and Trademark Office*, 689 F.3d 1303, 1321 (Fed. Cir. 2012), *affirmed in relevant part by Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, --- U.S. ---, 133 S. Ct. 2107, 2115 n. 3, 186 L. Ed. 2d 124 (2013) (the court found that there was a controversy even though ten years had passed since the defendant sent a warning letter because that letter prompted the plaintiff to refrain from conducting the allegedly infringing tests). Therefore, as the circumstances stand, there is no controversy regarding the '445 Patent and the Court does not have authority to issue any declaratory action with respect to this issue.

### b.  Sherman Act, Section 2 Claims

Viatek alleges that Radiancy is attempting to monopolize the hot wire hair cutting device market in the United States and asserts that Radiancy's conduct in attempting to do so constitutes a violation of Section 2 of the Sherman Act.[8] Counterclaims ¶¶ 69-77. Such actions include defrauding the USPTO in order to obtain patents for devices, knowingly filing "sham" lawsuits to enforce those patents, and interfering with Viatek's business relationships. "To state a claim

---

[8] Section 2 of the Sherman Act prohibits: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce . . . ." 15 U.S.C. § 2.

for attempted monopolization, a plaintiff must allege that a defendant '(1) engaged in anticompetitive or predatory conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" *Navarra v. Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 485 (S.D.N.Y. 2011) (quoting *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 226 (2d Cir. 1999)). Proof of the first element – that there was anticompetitive conduct – may be used to infer the existence of the second element. *See Volvo North Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 74 (2d Cir. 1988). The third element, however, must be separately established because "in the absence of monopoly power, even the specific intent to drive another company out of business, coupled with arguably tortious conduct in furtherance of that objective, are not enough to sustain an antitrust claim of attempted monopolization." *All Star Carts and Vehicles, Inc. v. BFI Canada Income Fund*, 887 F. Supp. 2d 448, 453 (E.D.N.Y. 2012).

### i. Antitrust Standing

"Private plaintiffs seeking to enforce Section 2 of the Sherman Act must satisfy the standing requirement of Sections 4 and 16 of the Clayton Act . . . . [which] requires plaintiff to 'prove antitrust injury[.]'" *Xerox Corp. v. Media Sciences Int'l, Inc.*, 511 F. Supp. 2d 372, 380 (S.D.N.Y. 2007) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977)). Antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp.*, 429 U.S. at 489. "[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law." *Gatt Communications, Inc. v. PMC Assocs., LLC*, 711 F.3d 68, 75 (2d Cir. 2013).

Viatek is "require[d to] identify[] the practice complained of and the reasons such a practice is or might be anticompetitive," *Alternative Electrodes, LLC v. EMPI, Inc.*, 597 F. Supp. 2d 322, 328 (E.D.N.Y. 2008), meaning it must allege that Radiancy's actions had a detrimental effect on competition in the market. "Under Section 4 of the Clayton Act, a plaintiff 'does not necessarily' need to allege and 'prove an actual lessening of competition in order to recover,' so long as competition is likely to decrease, although 'the case for relief will be strongest where competition has been diminished.'" *Xerox Corp.*, 511 F. Supp. 2d at 381 (quoting *Brunswick Corp.*, 429 U.S. at 489 n. 14). Viatek does not allege how Radiancy's actions have had "'an adverse effect on competition market-wide.'" *Rutolo v. Fannie Mae*, No. 09–CV–7851, 2013 WL 989740, at *7 (S.D.N.Y. Mar. 13, 2013) (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 213 (2d Cir. 2001)); *see also Bhanusali v. Orange Regional Med. Ctr.*, No 10-CV-6694 (CS), 2013 WL 4828657, at *9 (S.D.N.Y. Aug. 12, 2013). Viatek does not allege price increases, competitor exits from the market, or anything else that could substantiate the injury necessary to have standing to sue under the antitrust laws. Thus, Viatek has failed to adequately show that it has standing to bring its antitrust claim.

### ii.  Pleading Relevant Market and Market Power

"In order to survive a motion to dismiss, a claim under Sections 1 and 2 of the Sherman Act must allege a relevant geographic and product market in which trade was unreasonably restrained or monopolized." *Kramer v. Pollock-Krasner Foundation*, 890 F. Supp. 250, 254 (S.D.N.Y. 1995); *Marchon Eyewear, Inc. v. Tura LP*, No. 98 CV 1932(SJ), 2002 WL 31253199, at *5 (E.D.N.Y. Sep. 30, 2002) ("Without a definition of the relevant product market, there is no way to measure a company's ability to act as a monopolist."). "In determining the relevant market, the general rule is that commodities reasonably interchangeable by consumers for the

same purposes make up that part of the trade or commerce monopolization of which may be illegal." *Vitale v. Marlborough Gallery*, No. 93 Civ. 6276, 1994 WL 654494, at *3 (S.D.N.Y. July 5, 1994). Viatek defines the relevant market as both "bladeless non-laser heated hair element hair remover device," Counterclaim ¶ 15, and "trade in hot wire hair cutting devices in the United States." Counterclaim ¶ 76.

Viatek's definition of a relevant market is bare-bones and omits reference to the size of the market, Radiancy's share of the market, whether there are any other competitors, or any explanation for why the market should be defined as such. *See Thomson Info. Servs., Inc. v. Lyons Commercial Data, Inc.*, No. 97 CIV. 7716(JSR), 1998 WL 193236, at *2 (S.D.N.Y. 1998); *see also McCagg v. Marquis Jet Partners*, 05 Civ. 10607(PAC), 2007 WL 2454192, at *5 (S.D.N.Y. Mar. 29, 2007) (court stated that plaintiffs must offer "a theoretically rational explanation for why the boundaries of the market are defined as they are" and must "define the market according to the rules of interchangeability and cross-elasticity") (quotation and citation omitted); *Intellective, Inc. v. Mass. Mut. Life Ins. Co*, 190 F. Supp. 2d 600, 609 (S.D.N.Y. 2002) (court stated that granting a motion to dismiss is appropriate where a plaintiff fails to "allege facts regarding substitute products, distinguish among comparable products, or allege facts relating to cross-elasticity of demand"); *A & E Prods. Group L.P. v. The Accessory Corp.*, 00 Civ. 7271(LMM), 2001 WL 1568238, at *2 (S.D.N.Y. Dec. 7, 2001) (court stated that plaintiff should allege (1) "all products reasonably interchangeable, where there is cross-elasticity of demand"; and (2) "products [that] can be effectively substituted for the product allegedly being monopolized"; and explain "why the market alleged is a relevant, economically significant market, that is unique"). Without a relevant market definition, the Court cannot begin to assess the allegedly anticompetitive conduct.

Market power (or monopoly power) is "the power to control prices or exclude competition." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 389–91 (1956). "Monopoly power can be demonstrated directly by showing the power to set prices or exclude competition, or indirectly, by showing defendant's large percentage of market share." *All Star Carts and Vehicles*, 887 F. Supp. 2d at 453. Viatek states only that Radiancy has a "very substantial market share." Counterclaim ¶ 47. This is a conclusory statement and does not given the Court an adequate factual basis upon which to determine that there is a "dangerous probability" that Radiancy will achieve market power. In addition to failing to show antitrust standing, allege a relevant market, or that there is a dangerous probability that Radiancy will obtain market power, Viatek cannot sustain its claims that Radiancy engaged in anticompetitive or predatory conduct on either a *Walker Process* or a sham litigation theory.

### iii. Theories of Anticompetitive Conduct

"A patentee who brings an infringement suit may be subject to antitrust liability for the anti-competitive effects of that suit if the alleged infringer (the antitrust plaintiff) proves (1) that the asserted patent was obtained through knowing and willful fraud within the meaning of *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, . . . or (2) that the infringement suit was 'a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.'" *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998) (quoting *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961)).

### 1. *Walker Process*[9]

---

[9] Although the inequitable conduct Affirmative Defense and *Walker Process* claim are substantiated upon the same general factual allegations – that Radiancy engaged in fraud before the USPTO in obtaining its patent – these claims do differ slightly in analysis. "Consistent with the Supreme Court's analysis in *Walker Process*, . . . we have distinguished 'inequitable conduct' from Walker Process fraud, noting that inequitable conduct is a broader, more inclusive concept than the common law fraud needed to support a *Walker Process* counterclaim. . . . Inequitable

As first established in *Walker Process Equip., Inc. v. Food Mach. & Chemical Corp.*, 382 U.S. 172 (1965), antitrust liability under Section 2 of the Sherman Act "may arise when a patent has been procured by knowing and willful fraud, the patentee has market power in the relevant market, and has used its fraudulently obtained patent to restrain competition." *C.R. Bard, Inc. v. M3 Sys.*, Inc., 157 F.3d 1340, 1367 (Fed. Cir. 1998). Under this theory of antitrust liability, "[f]irst, the plaintiff must show that the defendant procured the relevant patent by knowing and willful fraud on the PTO . . . . Second, the plaintiff must prove all the elements otherwise necessary to establish a Sherman Act monopolization charge." *Ritz Camera & Image, LLC v. SanDisk Corp.*, 700 F.3d 503, 506 (Fed. Cir. 2012).

Claims under *Walker Process* are fraud claims and must therefore satisfy the heightened pleading standards of Rule 9(b), *see MedImmune*, 427 F.3d at 967, meaning that "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). This particularity requirement requires "that a party claiming *Walker Process* fraud[] must plead with particularity the materiality of the references which the patent applicant omitted, by presenting particularized allegations that 'but for' the omissions, the PTO would not have granted the patent." *Netflix, Inc. v. Blockbuster, Inc.*, No. C 06-02361 WHA, 2006 WL 2458717, *4 (N.D. Cal. Aug.22, 2006).

As with Viatek's inequitable conduct Affirmative Defense, its pleading falls short of the particularity requirement for this fraud-like claim. Viatek states that Radiancy did not disclose relevant prior art of which it was aware to the USPTO in its application for the '034 Patent.

---

conduct in fact is a lesser offense than common law fraud, and includes types of conduct less serious than 'knowing and willful' fraud." *Noblepharma*, 141 F.3d at 1069-70.

Viatek also pleads that the technology patented by Radiancy existed already and was "described in patent applications, printed publications, and other prior art teachings, and/or were otherwise merely obvious and not patentable in view of such prior art and/or relate to physical features admitted by Counterclaim-Defendants to be meaningless." Counterclaim ¶ 43. Viatek states only generalities and makes claims that could easily be lifted from this Counterclaim and be asserted in a different counterclaim against a different defendant regarding a different patent. *Walker Process* claims are a variation on common law fraud and therefore require the particularity that is required of fraud claims. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000). Although Viatek makes further arguments and substantiations in its opposition brief, this does not make up for the failure to plead with particularity.

Courts have previously provided parties an opportunity to amend Sherman Act claims to further particularize the claim before taking the extreme measure of granting dismissal with prejudice. The Court might be inclined to do so here, especially where facts stated in Defendant's opposition brief help overcome some of the deficiencies in Defendant's Counterclaim pleading. *See, e.g.*, *Viva Optique, Inc. v. Contour Optik, Inc.*, No. 03 Civ. 8948(LTS)(AJP), 2007 WL 4302729, at *3 (S.D.N.Y. 2007) (granting defendant leave to amend its counterclaim to properly state a Sherman Act *Walker Process* antitrust claim); *Christen Inc. v. BNS Industries, Inc.*, 517 F. Supp. 521, 526 (S.D.N.Y. 1981) (noting that defendant in *Walker Process* given leave to amend to state a Section 2 claim but denying leave to amend because defendant had already been granted leave to amend after having been made aware of the deficiencies in its Section 2 claim but failed to fix them); *Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 585 (S.D.N.Y. 2007) ("Without some indication of what additional facts, if any, [defendant] can assert in support of its failed counterclaims, the Court cannot

25

conclude that leave to replead is in the interests of justice, and the Court accordingly will not grant [defendant] an open-ended permission to replead that could result in another round of motions to dismiss. However, without such an indication, neither can the Court determine that the projected repleading would be futile. Thus, if [defendant] submits another motion for leave to replead, it must provide the Court with an "indication of what additional facts [it] would allege if permitted to amend" by attaching its proposed pleading to the motion.") However, Defendant was made aware at a pre-motion conference that its antitrust claims were deficient and made no effort or request to amend its pleading. Further, it had amended its counterclaims twice before the conference, neither of which remedied the deficiencies. Due to these facts, and the clear deficiencies in the pleading, the Court dismisses the antitrust counterclaims with prejudice.

### 2.   Sham Litigation

"Under the *Noerr-Pennington* doctrine, litigation as well as concerted efforts incident to litigation may not serve as a basis for an antitrust claim." *Viva Optique, Inc. v. Contour Optik, Inc.*, No. 03 Civ. 8948(LTS)(AJP), 2007 WL 4302729, at *2 (S.D.N.Y. 2007). "However, under the 'sham exception' to the doctrine, *Noerr-Pennington*'s antitrust immunity does not apply where litigation or other petitioning activity 'is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.'" *Id.* "To establish 'sham' administrative or judicial proceedings, a plaintiff must show that the litigation in question is: (i) 'objectively baseless,' and (ii) 'an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon.'" *Primetime 24 Joint Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 100-01 (2d Cir. 2000) (quoting *Professional Real*

*Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L. Ed. 2d 611 (1993)).

Where a patent infringement action is brought "'with knowledge the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes' [the case] is a 'sham' litigation." *Teva Pharm. Indus., Ltd. v. Apotex, Inc.*, No 07-5514 (GEB)(JJH), 2008 WL 3413862, at *5 (D.N.J. Aug. 8, 2008) (quoting *C.R. Bard Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1368 (Fed. Cir. 1998)). Viatek alleges that Radiancy brought this action knowing that its patent was invalid. However, subjective intent is only relevant if it is found that the litigation is objectively without merit. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993) ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation."). The existence of probable cause, requiring only "a reasonable belief that there is a chance that a claim may be held valid upon adjudication," defeats the objective component necessary to find that a plaintiff has engaged in sham litigation. *Id.* at 62-63.

Viatek cannot proceed on a sham litigation theory. Patents are presumptively valid and Viatek pleads no facts to support its sham litigation claim other than its subjective belief that Radiancy is deliberately pursuing a strategy to push Viatek out of the market. *See Viva Optique*, 2007 WL 4302729, at *2 ("Aside from the allegation of subjective intent, the Amended Complaint simply asserts that Defendants owned a patent and sought to enforce it. Given that such behavior is normally expected of patent holders . . . the additional generalized allegation that Defendants subjectively believed that their patents were actually invalid or not infringed is insufficient to sustain a plausible claim that Defendants' suits are objectively meritless." (internal

27

citations omitted)). Its allegations are wholly conclusory and therefore, it does not state an antitrust claim based on this theory.

### c. Unfair Competition

Viatek brings an unfair competition claim under the Lanham Act.[10] "The standard of unfair competition under New York law is a virtual cognate of the federal Lanham Act and is predicated on the theory of the misappropriation of a claimant's commercial goodwill." *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 331 F. Supp. 2d 247, 255 (S.D.N.Y. 2004) (internal citation omitted). "The essence of both sources of protection is the likelihood that the consuming public will be confused about the source of the allegedly infringing product." *E.R. Squibb & Sons, Inc. v. Cooper Labs., Inc.*, 536 F. Supp. 523, 526 (S.D.N.Y. 1982). "In order for defendant to succeed in demonstrating unfair competition under both the Lanham Act and the common law, defendant must show a likelihood of confusion or deception of the consuming public as to the source of the allegedly infringing product and bad faith on the part of plaintiffs." *Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 269 (S.D.N.Y. 2005).

"A cause of action for unfair competition, under both the Lanham Act and New York common law, arises when there is an attempt by a party to 'pass off' his goods as those of another . . . . Additionally, both unfair competition laws prohibit 'a broader range of unfair trade practices generally described as the misappropriation of the skill, expenditures and labors of another.'" *Tri-Star Pictures v. Unger*, 14 F. Supp. 2d 239, 363 (S.D.N.Y. 1998) (quoting *Pan*

---

[10] The Counterclaim does not make clear whether Viatek's unfair competition claim is brought as a common law claim or under the Lanham Act. However, in its declaration of jurisdiction over the Counterclaims, Viatek states that the Court has jurisdiction based on the federal patent laws and the federal antitrust laws, and does not make any claim to supplemental jurisdiction over state law claims. Accordingly, the Court assumes Viatek brings its unfair competition claim under the Lanham Act.

*American World Airways, Inc. v. Panamerican School of Travel, Inc.*, 648 F.Supp. 1026, 1039

(S.D.N.Y. 1986)). At the pleading stage, there must at least be allegations of the goods allegedly

misappropriated or marketed to the public, how such goods competed with those of the

counterclaim-plaintiff, the basis upon which the consuming public would be confused, and the

damages sustained. *See Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 331 F.

Supp. 2d 247, 255 (S.D.N.Y. 2004).

Viatek's claim for unfair competition states, "all previous allegations of the Complaint

constitute unfair competition under the laws of several states." Counterclaim ¶ 91. In its

opposition brief, Viatek argues that unfair competition encompasses a broad range of conduct

and that Radiancy's threats, groundless lawsuits, and contacting ShopNBC fall within the gamut

of an unfair competition claim. Opp'n Br. 33. Viatek may not base its unfair competition claim

on the bad faith litigation claim because "[t]he weight of authority clearly holds that bad faith

litigation-including bad faith patent infringement litigation-does not give rise to an unfair

competition claim under New York law." *Bayer Schera Pharma AG v. Sandoz, Inc.*, Nos. 08 Civ.

03710(PGG), 08 Civ. 08112(PGG), 2010 WL 1222012, at *7 (S.D.N.Y. Mar. 29, 2010).

Viatek's Counterclaims include the allegation that Radiancy's internet marketing

techniques are designed to "piggyback" Viatek's marketing by using the Pearl trademark in the

code for its website and by paying Google to have results for the no!no!® hair remover appear

before results for Viatek's product when searching "Pearl hair remover." Counterclaim ¶ 91. The

question of whether "use of another company's registered trademark in metadata or as part of a

sponsored search constitutes use of a trademark in commerce under the Lanham Act . . . [has

been sustained by] other circuits . . . . The courts in this Circuit, however, have largely rejected

these claims." *Site Pro-1, Inc. v. Better Metal, LLC*, 506 F. Supp. 2d 123, 125 (E.D.N.Y. 2007).

The Second Circuit addressed Viatek's claims regarding a Google search in *1–800 Contacts v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir. 2005). The Second Circuit stated,

> [I]n the search engine context, defendants do not "place" the ZOCOR marks on any goods or containers or displays or associated documents, nor do they use them in any way to indicate source or sponsorship. Rather, the ZOCOR mark is "used" only in the sense that a computer user's search of the keyword "Zocor" will trigger the display of sponsored links to defendants' websites. This internal use of the mark "Zorcor" as a key word to trigger the display of sponsored links is not use of the mark in a trademark sense.

*Id*. at 415.

Instead, "[t]he key question is whether the defendant placed plaintiff's trademark on any goods, displays, containers, or advertisements, or used plaintiff's trademark in any way that indicates source or origin." *Id*. at 127. Viatek does not allege this, nor any other claims that would state a claim either a misappropriation or a palming off theory. Therefore, Viatek has not stated a claim for unfair competition under the Lanham Act and this counterclaim is dismissed.

### d.  Tortious Interference

"[T]o prevail on . . . a claim [of tortious interference], a plaintiff in New York must prove that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003). ShopNBC sold Viatek's product on its website, evidencing that there was a relationship between the two entities. Douglass Dec. Ex. B. Radiancy clearly knew the relationship existed because it sent a letter to ShopNBC to inform it that Viatek's product was infringing Radiancy's patent.

Regarding the issue of malice or dishonest, unfair, or improper means, "[a] trademark owner is entitled to advise others of his trademark rights, to warn others that they or others are or may be infringing his rights, to inform others that he is seeking to enforce his rights through legal

proceedings, and to threaten accused infringers and their customers with suit." *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 428-29 (S.D.N.Y. 2008) (quoting *Leopold v. Henry I. Siegel Co.*, No. 86 Civ. 0063 (MGC), 1987 WL 5373, at *4 (S.D.N.Y. Jan. 5, 1987)). "[C]onduct undertaken to economically benefit defendants and not solely based on malice toward the plaintiff does not amount to tortious interference with business relations." *Anderson News, LLC v. Am. Media, Inc.*, 732 F. Supp. 2d 389, 404 (S.D.N.Y. 2010), *vacated on other grounds*, 680 F.3d 162 (2d Cir. 2012). Radiancy's letter to ShopNBC states that ShopNBC is offering for sale the Samba Total Body Hair Removal System, which it believes infringes Radiancy's intellectual property. This is the type of conduct that a patent-owner may undertake in order to protect its patents, which are presumed valid. There is nothing from the letter that indicates that the sole purpose behind Radiancy's action was malicious or that it used dishonest, unfair, or improper means. Furthermore, Viatek does not adequately allege an injury.

With respect to the injury showing, "[i]nterference that does not rise to the level of a breach of agreement or severance of the relationship does not amount to an injury sufficient to make a tortious interference claim." *RFP, LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 198 (S.D.N.Y. 2011). Viatek does not allege in its Counterclaims that the actions taken by Radiancy caused the end of the business relationship that it enjoyed with ShopNBC. Viatek alleges only that Radiancy's actions have "damaged" Viatek, a conclusory statement. Absent allegations that Radiancy's conduct caused the deterioration of the business relationship between Viatek and ShopNBC, Viatek's claim for tortious interference fails.

Finally, a lack of opposition is evidence that Counterclaim-Plaintiff "apparently concedes that the claim fails." *Wasserman v. Maimonides Medical Ctr.*, 970 F. Supp. 183, 192 (E.D.N.Y.

1997). Viatek does not oppose the motion to dismiss this counterclaim, further supporting its dismissal.

## VI.    Conclusion

In conclusion, Plaintiff's motion to strike Affirmative Defenses Six and Seven is granted. Plaintiff's motion to strike Affirmative Defense twenty-one is granted in part and denied in part. Plaintiff's motion to dismiss PhotoMedex as a Counterclaim Defendant is granted. Plaintiff's motion to dismiss the Counterclaim for (1) Declaratory Relief of non-infringement of the '445 Patent is granted; (2) Antitrust violation under the Sherman Act is granted; (3) unfair competition is granted; (4) tortious interference is granted. This opinion amends the opinion previously issued by this Court on March 28, 2014, Docket No. 113.

The Clerk of the Court is respectfully requested to terminate PhotoMedex from this case and terminate Docket No. 55.

Dated: April /<sup>ST</sup>, 2014                                        SO ORDERED:

        White Plains, New York

                                                  NELSON S. ROMÁN
                                       United States District Judge