UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
RADIANCY, INC.,

                 Plaintiff and Counter
                 Defendant,
   -against-

VIATEK CONSUMER PRODUCTS GROUP,
INC.,

                 Defendant and
                 Counter Claimant.
----------------------------------------------------------- X

13-cv-3767 (NSR) (LMS)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Radiancy, Inc. ("Radiancy") commenced this action against Viatek Consumer Products Group, Inc. ("Viatek") alleging, *inter alia*, infringement of Radiancy's U.S. Patent No. 7,170,034 (the "Patent" or the "'034 Patent"). Before the Court is a dispute regarding construction of certain claim terms in the Patent.

The Patent is for a hair removal device that uses "pulsed heating" of a heat element to remove bodily hair. The parties ask this Court to construe five phrases: (1) "juxtaposed" (relevant to claims 1 and 59); (2) "controller" (relevant to claims 1 and 59); (3) "comprises" (relevant to claim 4); (4) "pulsed heating of said one or more heat elements" (relevant to claims 1 and 59); and (5) "such that the heat elements do not burn said skin surface" (relevant to claim 1). The relevant claims are excerpted in full below:

> 1. A hair cutting apparatus comprising:
>     a structure, a portion of which being adapted for placement against a skin surface where hair is to be cut;
>     a heat generator comprising one or more heat elements positioned to touch said hair and heated to a temperature sufficient to cut hair, at least one of said heat elements being juxtaposed with said portion; and
>     a controller that controls the power source to provide pulsed heating of said one or more heat elements such that the heat elements do not burn said skin surface.

> . . . .
> 4. Apparatus according to claim 1 wherein said controller comprises a velocity detector.
> . . . .
> 59. A hair cutting apparatus comprising:
> > a structure, a portion of which being adapted for placement against a skin surface where hair is to be cut;
> > a heat generator comprising one or more heat elements positioned to touch said hair and heated to a temperature sufficient to cut hair, at least one of said heat elements being juxtaposed with said portion; and
> > a controller that controls the power source to provide pulsed heating of said one or more heat elements, the controller further comprising a velocity detector.

U.S. Patent No. 7,170,034 at 20:23-32, 20:39-40, 24:9-18 (filed July 21, 2002).

The parties submitted opening claim construction papers on April 4, 2014, and completed briefing on April 29, 2014. (*See* ECF Nos. 119, 121, 143, 144.) The Court has not yet conducted a *Markman* hearing. "[D]istrict courts are not required to follow any particular procedure in conducting claim construction; while some courts have found it useful to hold hearings such a procedure is not always necessary." *J.G. Peta, Inc. v. Club Protector, Inc.*, 65 F. App'x 724, 727 n.2 (Fed. Cir. 2003) (alterations and internal quotation marks omitted). A *Markman* hearing is unnecessary, for example, if the Court is able to determine the scope of the claims based on intrinsic evidence, dictionaries, and expert reports. *Wi-Lan, Inc. v. LG Elec., Inc.*, No. 10 Civ. 432 (LAK)(AJP), 2011 WL 3279075, at *18 (S.D.N.Y. Aug. 2, 2011); *see also J.G. Peta*, 65 F. App'x at 727 n.2 (affirming the district court's conclusion that a hearing was not necessary in light of the "simple technology and straightforward claim language at issue"); *Revlon Consumer Prods. Corp. v. Estee Lauder Cos.*, No. 00 Civ. 5960 RMB AJP, 2003 WL 21751833, at *14 (S.D.N.Y. July 30, 2003) (declining to hold a *Markman* hearing where the claims were "neither ambiguous nor highly technical"). The Court finds that a *Markman* hearing is unnecessary with respect to the first three phrases because those terms are clear, unambiguous, and non-technical. The Court will rule on the remaining terms after a *Markman* hearing.

**LAW GOVERNING CLAIM CONSTRUCTION**

"Claim construction is the single most important event in the course of a patent litigation." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 659 F.3d 1369, 1370 (Fed. Cir. 2011). "It defines the scope of the property right being enforced, and is often the difference between infringement and non-infringement, or validity and invalidity." *Id.* Claim construction is a question for the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 382 (1996). Claim language is generally given its "ordinary and customary meaning," that is, "the meaning that the [language] would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).

The first and most important reference point for a court is the language of the claims. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). A court should not construe claim language that is clear on its face. *See Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1371 (Fed. Cir. 2002). Nor should a court limit or expand the scope of a claim, thereby altering the scope of the invention, under the guise of construction. *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005).

If the meaning of a claim is not clear on its face, a court looks to intrinsic and extrinsic evidence. Intrinsic evidence is the starting point and includes the patent's specification and prosecution history before the United States Patent and Trademark Office (the "PTO"). *Virtonics*, 90 F.3d at 1582. The specification is often "the single best guide to the meaning of a disputed term." *Id.* But a court should be careful not to import limitations from the specification into a claim. *Comark Commc'ns v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998); *see also Tate Access Floors*, 279 F.3d at 1371. Nor should a court confine a claim to the specific embodiments in the specification. *Nazomi Commc'ns., Inc. v. ARM Holdings, PLC*, 403 F.3d

1364, 1369 (Fed. Cir. 2005).  The prosecution history may also be considered if in evidence, "[y]et because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes."  *Phillips*, 415 F.3d at 1317.  Finally, a court may consider extrinsic evidence like expert testimony, dictionaries, and treatises, but "such evidence is generally of less significance than the intrinsic record."  *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1316 (Fed. Cir. 2014).

## CLAIM CONSTRUCTION FOR THE '034 PATENT

**I. "Juxtaposed" (Claims 1 and 59)**

Claims 1 and 59 are materially identical for purposes of construing "juxtaposed."  In both claims, at least one heat element must be "juxtaposed" with the skin-contacting portion of the device.  '034 Patent at 20:23-25, 20:28-29, 24:9-11, 24:14-15.  Viatek's position is that "juxtaposed" means "positioned substantially side by side in the relevant plane," which would require that at least one heat element be positioned such that it achieves substantial contact with the skin surface during use.[1]  Radiancy's position is that no construction is necessary, but if the Court deems it necessary to construe the term, the term should be given its plain and customary meaning of "placed in a close spatial or ideal relationship or placed side by side."  In other words, Radiancy's construction would cover devices in which the heat elements are close to, but do not directly contact, the skin.

**A. The Claim Language**

The claims are the starting point.  Claims 1 and 59 do not mention that at least one heat element must be positioned such that it contacts the skin, an omission this Court finds

---

[1] Although Viatek offers several constructions that differ in wording, they all have the same import.

significant.  Had the inventors intended this limitation, they could have drafted the claims to expressly include it.  The claims elsewhere are very express when they impose a limitation of skin contact.  *See* '034 Patent at 20:24-25, 24:10-11 ("adapted for placement against a skin surface" in Claims 1 and 59); *id.* at 22:65-66 ("wherein said one or more elements contact said skin surface" in Claim 53); *id.* at 23:2 ("a heat element touching the skin" in Claim 54).  It makes no sense to read the same meaning into such circuitous language as "juxtaposed with said portion [of the device that is adapted for placement against a skin surface]."  *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010), *aff'd*, 131 S. Ct. 2238 (2011) (rejecting a limitation not expressly included in the claim language in part because it could have been drafted into the claims).

      Furthermore, "[t]he doctrine of claim differentiation creates a presumption that each claim in a patent has a different scope."  *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1271 (Fed. Cir. 2010) (alterations omitted).  Claim 53 provides:  "Apparatus according to claim 1 wherein said one or more elements contact said skin surface."  '034 Patent at 22:65-66.  It is therefore presumed that Claim 1 does not require that "one or more [heat] elements contact [the] skin surface."  *See Phillips*, 415 F.3d at 1314-15 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").  Viatek's proposed construction of "juxtaposed" is presumptively invalid because it would impose that very limitation.  Although claim differentiation is not conclusive, the presumption "is at its strongest in this type of case, where the limitation that is sought to be read into an independent claim already appears in a dependent claim."  *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012) (internal quotation

marks omitted), *on reh'g*, 707 F.3d 1295 (Fed. Cir. 2013).  Moreover, for the reasons explained in the following sections, the evidence fails to overcome the presumption here.

      B. The Specification

"Juxtaposed" is not expressly defined in the specification.  In fact, it appears only once in the specification outside of Claims 1 and 59, and that instance lends no further color to the term. *See* '034 Patent at 6:2 (reciting essentially the language of Claim 1).  Acknowledging the absence of lexicography, Viatek instead points out that the specification lauds the benefits of direct contact between the heat element and the skin (such as a closer shave), and the specification also explains that the use of "pulsed heating" is protection enough to allow direct contact without burning the skin.  Viatek asks the Court to conclude from this teaching that direct contact is required.  But Viatek's argument confuses necessary and sufficient conditions, and even so, the Court cannot import a limitation from the specification into the claims, *Comark Commc'ns*, 156 F.3d at 1186.

In fact, the specification discloses embodiments that are inconsistent with Viatek's construction.  Figure 4A shows an exemplary embodiment that includes three heat elements on the same horizontal plane labeled 514, 516, and 518:



*See* '034 Patent fig.4A.[2]  The Patent discloses that the three heat elements are positioned such that they "are all . . . in continuous contact with a portion of skin 524 [not shown]," but that "alternatively, the heights of heat elements 514, 516, and 518 can be set so that, for example, they are not in contact with skin 524 [not shown] and cut hairs to a specific length." *Id.* at 11:65-12:3.  If "juxtaposed" required direct contact by at least one heat element, this alternative embodiment would fall outside of the claims.

Figure 4B shows another exemplary embodiment comprising three heat elements at different heights:



*See id.* fig.4B.[3]  The Patent discloses that heat element 514 in Figure 4B, the one that is closest to skin 524, "could be set to cut hair 522 at 0.5 millimeters or greater," *id.* at 12:36-37—i.e., another configuration in which no heat element achieves skin contact.  "[A] claim interpretation that does not cover a disclosed embodiment is rarely, if ever, correct." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 135 F.3d 774 (Fed. Cir. 1997) (unpublished) (internal quotation marks omitted).

---

[2] In Figure 4A, 500 is the hair cutting apparatus, 506 is the housing, 504 is the slot in the housing into which hair enters to be cut, 508 is the direction that the user moves the apparatus in relation to the skin, and 512 is not defined.
[3] In Figure 4B, 500 is the hair cutting apparatus, 506 is the housing, 504 is the slot in the housing into which hair enters to be cut, and 508 is the direction that the user moves the apparatus in relation to the skin.

C. The Prosecution History

Nor does the prosecution history support Viatek's construction. Statements made during prosecution can narrow a claim's scope only where "a patentee makes a clear and unmistakable disavowal of scope." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1341 (Fed. Cir. 2012) (finding this rule justified because ongoing negotiations between the patent applicant and the examiner often produce ambiguities). If a "reasonable, contrary reading of the prosecution history" exists, there is no disavowal. *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

Viatek focuses on the patent applicants' attempt to distinguish their invention from *Kneisley*, a prior patent that the examiner raised as an anticipating reference in a June 6, 2005 PTO action. (*See* Handal Decl. Ex. 13, ECF No. 120-3.) *Kneisley* was directed to a nose-hair singeing device that used a physical guard to create a gap between the heat element and the skin. (*See id.*) Although the device in *Kneisley* did not employ pulsed heating, the patent examiner determined that it would be obvious to combine *Kneisley* with pulsed heating, as pulsing was well known in the art as a way to prolong the life of a heat element and reduce energy consumption. (*See id.*) In response, the patent applicants argued that in *Kneisley*, "the heated element is not controlled such that it avoids burning the user's skin and as a result a guard . . . must be used to prevent the heated element from touching the inside of the user's nose." (Handal Decl. Ex. 6, ECF No. 120-2.) The patent applicants also amended Claim 1 to add the phrase "such that the heat elements do not burn said skin surface" and explained:

> Claim 1 has been amended to more clearly point out a distinguishing feature of some exemplary embodiments of the present invention. It can be seen from the specification that the pulsing of the heat elements . . . is used to carefully control the temperature of the heat elements. This careful control of the heat element is designed to enable hair cutting but to prevent the burning of the user's skin. Such control is not described, or even suggested, anywhere in the cited references.

8

(*Id.*)

This falls far short of an unambiguous disavowal of scope. The patent applicants distinguished their invention on the basis that it uses pulsed heating as a protective measure, not on the basis of direct contact. Their mere mention of *Kneisley*'s physical guard is not a disavowal. *See Grober*, 686 F.3d at 1381 ("Prosecution disclaimer does not apply . . . if the applicant simply describes features of the prior art and does not distinguish the claimed invention based on those features.").

D. Extrinsic Evidence

Though cognizant of the deficiencies of dictionary definitions, *see Phillips*, 415 F.3d at 1320-22, the Court "may . . . rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents," *id.* at 1322-23. Dictionary definitions indicate that "juxtaposed" means not only "side by side in the relevant plane," but also "side by side," in a "close spatial . . . relationship," or in an "ideal relationship." (Vinti Decl. Ex. 2, ECF No. 122-1.) *See also Juxtapose*, DICTIONARY.COM UNABRIGED, http://dictionary.reference.com/browse/juxtapose (last visited Jan. 9, 2015) ("[T]o place close together or side by side, especially for comparison or contrast."); *Juxtapose*, OED ONLINE, http://www.oed.com/view/Entry/102288 (last visited Jan. 9, 2015) ("To place (two or more things) side by side, or close to one another, or (one thing) by the side of another."); *Juxtapose*, OXFORD DICTIONARIES, http://www.oxforddictionaries.com/us/definition/american_english/juxtapose (last visited Jan. 9, 2015) ("Place or deal with close together for contrasting effect."). Viatek would inflict the

narrowest sense of the term but offers no compelling reason why other meanings should be ignored.

For the foregoing reasons, the Court finds that "juxtaposed" means "placed in a close spatial or ideal relationship or placed side by side."

## II. "Controller" (Claims 1 and 59)

The word "controller" in Claims 1 and 59 describes the part of the hair cutting apparatus "that controls the power source to provide pulsed heating of said one or more heat elements." *Id.* at 20:30-31, 24:16-17. The controller in Claim 59 "further compris[es] a velocity detector." *Id.* at 24:17-18. Viatek asks the Court to construe "controller" to mean "a controller which, without human regulation, performs a specified control function." This construction imposes a limitation on the claims that finds no support in the claims, the specification, the prosecution history, or any meaningful extrinsic evidence. Claim 59 itself precludes Viatek's construction because the controller in Claim 59 includes a "velocity detector," which depends on human regulation. The Patent teaches that a velocity detector "causes said heat generator to increase its rate of repeated pulsing when the velocity of said apparatus increases in relation to said skin and to decrease its rate of repeated pulsing when the velocity of said apparatus decreases in relation to said skin." *Id.* at 6:10-16. The user of the device, a human, regulates the velocity of the apparatus in relation to the skin. Therefore it cannot be true that a "controller" performs all functions "without human regulation." Viatek's feeble argument that the "longstanding interpretation" of 35 U.S.C. § 101—that no patent may issue on a claim encompassing a human organism—compels the Court to adopt Viatek's construction is the height of absurdity. *Cf. Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1369-70 (Fed. Cir. 2010) (rejecting a construction of

"controlling" that excluded manual control by a human operator).  "Controller" has a clear meaning.  Therefore, the Court agrees with Radiancy that construction is unnecessary.

### III.  "Comprises" (Claim 4)

The specification defines "comprises" to mean "including but not necessarily limited to." *Id.* at 20:15-17.  The specification "acts as a dictionary when it expressly defines terms used in the claims" and is "the single best guide to the meaning of the disputed term."  *Vitronics*, 90 F.3d at 1582.  The Court finds no reason to depart from the specification's explicit definition.  Viatek's arguments in favor of its proposed construction ("further comprises") are unpersuasive.  Therefore, the Court finds that "comprises" means "including but not necessarily limited to."

### IV. Remaining Terms

The terms that remain to be construed are "pulsed heating of said one or more heat elements" and "such that the heat elements do not burn said skin surface."  For purposes of construing these terms, the parties' dispute primarily concerns whether "pulsed heating" encompasses pulses of electricity that are so rapid (or whose duty cycles so great) that the heating element receiving the pulses maintains a substantially constant temperature.  The Court believes that a *Markman* hearing may be helpful in construing this term.  The phrase "such that the heat elements do not burn said skin surface" is nontechnical and sufficiently clear that construction is likely inappropriate, but because it is conceptually bound to "pulsed heating," the Court will address this phrase after the *Markman* hearing.

## CONCLUSION

The Court's claim construction rulings as to the terms "juxtaposed," "controller," and "comprises" are set forth above. A *Markman* hearing as to the remaining terms is scheduled for Monday, March 2, 2015 at 12:00 p.m.

Dated: January 14, 2015
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge